**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 25-14200-CIV-CANNON**

**BHARAT KUMAR PATEL** and
**HIRALBEN A PATEL,**

Plaintiffs,
v.

**MARKWAYNE MULLIN,**
**JOSEPH B. EDLOW** and
**TODD BLANCHE,**

Defendants.
__________________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint (the "Motion") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or alternatively, for failure to state a claim pursuant to Rule 12(b)(6) [ECF No. 8]. The parties have fully briefed the Motion [ECF No. 9 (Response); ECF No. 10 (Reply)], and submitted supplemental briefs on whether 5 U.S.C. § 701(a)(2) bars Plaintiffs' claim under the Administrative Procedure Act ("APA") [ECF Nos. 14–16]. The Court has reviewed the Motion, the Complaint [ECF No. 1], the full record, and the applicable law. Following review, the Motion [ECF No. 8] is **GRANTED**; the APA challenge under Count I is dismissed for lack of subject matter jurisdiction under 5 U.S.C. § 701(a)(2); and the Due Process claim in Count II is dismissed for failure to state a claim.

**BACKGROUND**

Plaintiffs are citizens of India who entered the United States in 2002 [ECF No. 1 ¶ 47]. Plaintiff Bharat Kumar Patel alleges that he was the victim of multiple violent crimes while

employed at a convenience store, making him eligible to file a Petition for U Nonimmigrant Status via Form I-918 ("U Visa" or "U Visa Petition") [ECF No. 1 ¶ 1]. Although the alleged crimes occurred between 2003 and 2005, Plaintiff Bharat Kumar Patel did not file the U Visa petition until November 18, 2022—seventeen years after the most recent qualifying criminal activity [ECF No. 1 ¶ 4 (alleging that delay resulted from "widespread lack of awareness about the U visa program")]. Plaintiff Bharat Kumar Patel's U Visa Petition remains pending before the United States Citizenship and Immigration Services (USCIS) as of November 18, 2022, the date on which it was filed [ECF No. 1 ¶ 4]. That same date, the wife of Plaintiff Bharat Kumar Patel, Plaintiff Hiralben A. Patel, filed an application for a derivative U Visa on Form I-918A seeking to obtain status through her husband's application [ECF No. 1 ¶ 1 n.2]. That derivative application also remains pending as of November 18, 2022 [ECF No. 1 ¶ 8].

By statute, Congress has capped U Visas at 10,000 per fiscal year, *see* 8 U.S.C. § 1184(p)(2)(A)–(B), so USCIS adjudicates each petition in two relevant steps: it first conducts a de novo review to determine whether the petitioner is eligible for the visa. *See* 8 C.F.R. § 214.14(c)(4). Second, in the event that USCIS finds the petitioner eligible under the first step yet cannot issue the visa "due solely to the [10,000] cap," USCIS is directed by regulation to place the applicant "on a waiting list," at which point USCIS prioritizes petitions by filing date, 8 C.F.R. § 214.14(d)(2) [ECF No. 1 p. 4 n.3]. In the case of Plaintiffs, USCIS has not yet made an initial eligibility determination, so Plaintiffs are not within the class of "eligible petitioners" to whom the waiting list directive applies [ECF No. 1 ¶ 78]. Instead, USCIS has made what it calls a "bona fide determination" ("BFD")—a threshold screen that unlocks employment authorization and deferred action while the petition awaits adjudication [ECF No. 1 ¶ 65; ECF No. 1-3 (Notice of Action)].

Plaintiffs now sue to compel USCIS "to take action on Plaintiffs' respective Petitions" or, in the alternative, to place them on the U Visa waitlist [ECF No. 1 ¶¶ 4, 6]. Their claims purport to arise under the APA (Count I) and the Due Process Clause of the Fifth Amendment (Count II) [ECF No. 1 pp. 17–21].

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim [ECF No. 8]. As for jurisdiction, Defendants travel first under Article III of the United States Constitution, arguing that Plaintiffs' claims are moot because the Court, as a result of the statutory cap on annual U Visas, cannot act to offer any relief to Plaintiffs, who already received temporary employment authorization plus deferred action pending resolution of their petitions [ECF No. 8 pp. 10–12; ECF No. 1-3].[1] For similar reasons, Defendants say Plaintiffs have not pled or experienced an injury sufficient to confer Article III standing [ECF No. 8 p. 13]. Defendants then shift to challenge jurisdiction in the context of Plaintiffs' APA claim in Count I. For that argument, Defendants say the Court is precluded from exercising judicial review under 5 U.S.C. § 701(a)(1) because the underlying statutes in 8 U.S.C. §§ 1151 through 1382 and 8 U.S.C. § 1252(a)(2)(B) give USCIS full discretion over the processing and pacing of nonimmigrant admissions. 5 U.S.C. § 701(a)(1) (permitting APA review "except to the extent that—(1) statutes preclude judicial review"). Defendants also rely on 5 U.S.C. § 701(a)(2) to argue that the Court cannot exercise judicial review because "the pace of adjudication of U visa petitions is entirely within agency discretion" and "no judicially manageable standards" exist against which to judge the challenged agency action [ECF No. 8 p. 2; ECF No. 16]. 5 U.S.C. §701(a)(2) ("This chapter

[1] Because USCIS is limited to issuing no more than 10,000 U Visas each year and is currently adjudicating petitions filed in 2016, Defendants reason that more than 100,000 earlier-filed petitions would remain ahead of Plaintiffs even if USCIS placed Plaintiffs on the waitlist today [ECF No. 8 pp. 1–2, 11–14].

applies, according to the provisions thereof, except to the extent that . . . (2) agency action is committed to agency discretion by law."). On the merits, Defendants argue that Plaintiffs fail to state a claim under the APA because the delay is not unreasonable under the factors set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) [ECF No. 8 pp. 17–19]. And as to the Due Process Clause, Defendants emphasize that Plaintiffs' claim fails because Plaintiffs have no property right or other protected entitlement to receive a U Visa or to receive it on a certain timetable; nor can there be any suggestion that Defendants' alleged inaction violates a fundamental right recognized under principles of substantive due process [ECF No. 8 pp. 20–21].

**LEGAL STANDARDS**

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). On a facial attack such as this one, the Court "merely [looks] to see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction" and takes the allegations as true. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted).

A Rule 12(b)(6) motion tests the complaint's sufficiency: it must contain "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## DISCUSSION

Two claims are before the Court. Plaintiffs bring Count I under the APA and ask the Court to compel USCIS to adjudicate Plaintiffs' U Visa petitions or, in the alternative, to place Plaintiffs on the statutory waiting list [ECF No. 1 ¶¶ 70–81]. As pled, Count I is properly characterized as a claim of unreasonable delay.[2] Count II alleges that the delay in adjudication violates the Due Process Clause of the Fifth Amendment [ECF No. 1 ¶¶ 82–92]. Following review, Count I is dismissed for lack of subject-matter jurisdiction under 5 U.S.C. § 701(a)(2), and Count II is dismissed for failure to state a claim.[3] The Court reasons below.

[2] This characterization is appropriate for three reasons. First, the operative allegations largely sound in time [ECF No. 1 ¶¶ 73 (noting Defendants' "failure to adjudicate Plaintiffs' respective petitions within a timely manner constitutes an unreasonable delay"), 71–72, 76–77 (alleging a "duty to adjudicate . . . within a [r]easonable period of time" and a wait of "over 30 months or 935 days")]. Second, the marks of a withholding claim (as distinct from an unreasonable delay claim) are absent. An agency withholds action when it misses a date-certain deadline or refuses outright to perform a required act. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) ("[I]f an agency has no concrete deadline establishing a date by which it must act . . . a court must compel only action that is delayed unreasonably."). This record contains no deadline, and Plaintiffs do not allege that USCIS announced that it would never adjudicate their petitions [ECF Nos. 1, 9, 15]—which sets this instant case apart from cases like *Lorente v. U.S. Citizenship & Immigr. Servs.*, No. 25-cv-25646, 2026 WL 1396116, at *5 (S.D. Fla. May 19, 2026) ("Defendants' own admission that adjudication is prohibited—not merely slow—forecloses pace-challenge framing and confirms that this is the kind of unlawfully withheld agency action subject to judicial review under 5 U.S.C. § 706(1)." (quotation omitted)). Even further, Plaintiffs' supplemental brief itself frames the claim as one of "Reviewable Delay" [ECF No. 15 p. 5]. Third, this process is demonstrably moving: petitions filed November 18, 2022; biometrics completed July 10, 2023; and favorable bona fide determinations with employment authorization and deferred action issued January 24, 2025 [ECF No. 1 ¶¶ 4, 65; ECF No. 1-3; ECF No. 8 pp. 5–6].

[3] The Court need not resolve Defendants' Article III challenge to Count I because 5 U.S.C. § 701(a)(2) independently deprives the Court of jurisdiction over that claim. As to Count II, the Court is satisfied that Plaintiffs have Article III standing. Their petitions remain pending without an eligibility determination, and a favorable decision would redress the alleged loss of an opportunity to proceed through the immigration process by giving Plaintiffs the benefit of being placed on the U Visa waitlist. *See* 8 C.F.R. § 214.14(b)(2); *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) (recognizing the "deprivation of an opportunity to apply for adjustment of status" as an injury that a favorable decision "would redress"); *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1314 n.2 (S.D. Fla. 2023). That Plaintiffs

**A. The Court lacks the power to review Plaintiffs' APA claim in Count I because the challenged action—USCIS's failure to adjudicate Plaintiffs' Petitions fast enough or to place Plaintiffs on the U Visa waitlist—is an agency action "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2).**

Under the APA, courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). That authority has limits: review is unavailable where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or where "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Under § 701(a)(2)—the provision on which the Court ordered supplemental briefing and on which the Court ultimately relies [ECF No. 14]—federal courts are empowered only "to compel an agency to perform a ministerial or non-discretionary act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (quotation omitted). Accordingly, § 701(a)(2) precludes review of action "traditionally left to agency discretion," *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993), and applies "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019). This exception is a narrow one. *Id.* The inquiry "requires careful examination of the statute on which the claim of agency illegality is based," *Webster v. Doe*, 486 U.S. 592, 600 (1988), and involves two related inquiries: whether governing law confides the challenged judgment to the agency and whether that law nevertheless supplies a meaningful standard for judging the agency's exercise of that judgment. *See Dep't of Commerce*, 588 U.S. at 771–72 (holding that the Census Act "confers broad authority on the

have received bona fide determinations does not eliminate that Article III injury merely because BFDs and waiting-list determinations share certain interim benefits. *See Arenales-Salgado-de-Oliveira v. Jaddou*, No. 23-61167-CIV, 2024 WL 68291, at *3–4 (S.D. Fla. Jan. 5, 2024) ("[A] BFD and waiting list placement are not equivalent"); *Reyes Olmos v. U.S. Citizenship & Immigr. Servs.*, 785 F. Supp. 3d 459, 471–72 (D. Neb. 2025) (noting that a waitlist determination ("WLD") "is not the same as a [BFD] and th[at] plaintiffs who have the latter but still seek the former have standing to sue." (quotation omitted)).

Secretary" but "does not leave his discretion unbounded"). Those inquiries inform one another, but a finding of discretion alone does not end the analysis. Finally, in this Circuit, "[w]hether an agency action is reviewable under § 701(a)(2) is a matter of subject matter jurisdiction," *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1214 (11th Cir. 2015).

In the case of U Visas, the governing statutory and regulatory scheme places discretion over eligibility determinations and the timing of such determinations with the Department of Homeland Security ("DHS") and USCIS. Congress created the U Visa nonimmigration status for noncitizens who are victims of qualifying crimes and who assist law enforcement—but that status does not follow automatically from those facts. Rather, Section 1101(a)(15)(U)(i) makes U status available only "if the Secretary of Homeland Security determines" that the applicant satisfies specified statutory criteria—namely, the alien must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" as further specified in the statute, must possess information about the qualifying crime, and must be helping or is likely to be helpful to law enforcement in connection with the investigation of that criminal conduct. 8 U.S.C. § 1101(a)(15)(U)(i).[4] Further, as noted above, Congress caps the number of U Visas at 10,000 per fiscal year, regardless of the number of applications submitted. 8 U.S.C. § 1184(p)(2)(A)–(B). Congress then directs the Secretary of Homeland Security to establish regulations and issue instructions "as he deems necessary for carrying out his authority" under the relevant chapter

[4] "Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence of one or more of the factors automatically does not create a presumption that the abuse suffered was substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level." 8 C.F.R. § 214.14(b)(1).

(Chapter 12), which includes U Visas. *Id.* § 1103(a)(3). As part of those regulations, the Department of Homeland Security (DHS) gives USCIS "sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1). In the exercise of that discretion, USCIS conducts a de novo review of each petition, which must be provided on a prescribed form as designated by USCIS, with specified evidence, 8 C.F.R. § 214.14(c); conducts an eligibility determination based on specified factors as alluded to above (alien suffered abuse as a result of being a victim of a qualifying crime in the United States or its territories, possesses reliable information regarding the crime, and is likely to assist the investigation or prosecution of the criminal conduct), *id.* § 214(b); and places petitioners found eligible but unable to receive a visa "due solely to the cap" on a waiting list which USCIS prioritizes by filing date, *id.* § 214.14(d)(2). A U Visa may be approved for a period "not to exceed 4 years in the aggregate" and can be extended upon submission of additional evidence. *Id.* § 214.14(g). USCIS may also revoke an approved petition in certain circumstances, *id.* § 214.14(h), and more broadly, nothing in the regulations inhibits USCIS from instituting removal proceedings, *id.* § 214.14(i).

No provision in this U Visa framework—statutory or regulatory—sets a deadline for USCIS to make the required eligibility determination or otherwise puts any timing parameters or timetable on the process. The only congressional word on timing appears elsewhere in Title 8, in 8 U.S.C. § 1571(b)—a sub-section entitled "Policy"—which states the aspirational "sense of Congress" that immigration benefit applications, which includes any application or petition to change/adjust/extend status granted under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, "should be completed" within 180 days of filing. 8 U.S.C. § 1571(b) (providing the "sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application"); *see id.* § 1572.

Having reviewed this statutory and regulatory framework in light of the parties' arguments, the Court turns back to § 701(a)(2) of the APA and the pertinent question: does the governing law supply a meaningful standard for judging when USCIS must make adjudicate petitions presented to it? Plaintiff says yes, pointing to an "ancillary matter" provision within the APA, which sets notice, representation, and hearing procedures for persons appearing before agencies and then generally states: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555. Plaintiff also cites the 180-day Congressional aspiration language discussed above from 8 U.S.C. § 1571(b) [ECF No. 15]. Defendants, for their part, emphasize the reality of the U Visa legal framework, which is that no U Visa statute or regulation imposes a meaningful deadline for the determination of eligibility or the adjudication of the application.

The Court agrees with Defendant that dismissal is warranted under APA § 701(a)(2).[5] As noted, Congress did not make U status automatic upon satisfaction of the statutory criteria. Instead, Congress made U status available only "if the Secretary of Homeland Security determines" that the criteria are satisfied. 8 U.S.C. § 1101(a)(15)(U)(i). DHS, in turn, assigned that determination—and every other step in the life of a U Visa petition—to USCIS alone. 8 C.F.R. § 214.14(c)(1) ("USCIS has sole jurisdiction over all petitions for U nonimmigrant status."). That

[5] *See Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1256 (S.D. Fla. 2022) ("Because the pace of USCIS' processing of I-130 Petitions is left to the sound discretion of the agency, and because such pacing neither qualifies as or is subject to a nondiscretionary act, the Court lacks the jurisdiction to hear the claim and the authority to Order USCIS to expedite review of Plaintiffs' Petition. The Court is not aware of any statutory or regulatory provisions that govern the pace of USCIS' processing of I-130 Petitions; as such, there is no identifiable standard against which the Court can measure whether the agency has unlawfully withheld or unreasonably delayed review." (quotation omitted)); *see also Lorente*, 2026 WL 1396116, at *8; *Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021); *Hasan v. Wolf*, 550 F. Supp. 3d 1342, 1347 (N.D. Ga. 2021).

statutory and regulatory design places both the eligibility determination and the process of reaching it within USCIS's discretion. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 7 (2024) (finding a statute to be a "quintessential grant of discretion" where, among other things, "Congress did not impose specific criteria or conditions limiting this authority, nor did it prescribe how or when the Secretary must act"); *Mobil Oil Expl. & Producing Se. Inc. v. United Distribution Companies*, 498 U.S. 211, 230 (1991) (noting that an agency enjoys "broad discretion determining how to best handle related, yet discrete, issues in terms of procedures, and priorities" (citations omitted)). Moreover, nothing in the U Visa provision tells USCIS when it must make the eligibility determination. Neither § 1101(a)(15)(U), § 1184(p), nor 8 C.F.R. § 214.14(c)(1) sets a deadline, sequence, or priority rule for adjudication, and the regulations place no time limit on USCIS's de novo review. In a program capped at 10,000 visas per year and carrying a six-figure backlog, USCIS must choose which petitions to reach—and when—by allocating its limited adjudicative resources, a judgment traditionally left to agency discretion. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (quotation omitted)); *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (noting that the agency "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities"). With no timetable to enforce and no criteria to apply, the Court has no guidepost to assist it in deciding when USCIS's pace becomes impermissibly slow. Put simply, the Court has "no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce*, 588 U.S. at 772.

In response, Plaintiffs point to 5 U.S.C. § 555(b) and 8 U.S.C. § 1571(b) as the "standard" to gauge USCIS' exercise of discretion in this context—but neither source supplies one. Section 555(b) is a general housekeeping provision of the APA with notice protections for parties appearing before agencies, and it directs that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b); *see Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (recognizing§ 555(b)'s general duty to act within a reasonable time as sufficient to support federal question jurisdiction under 28 U.S.C. § 1331, without addressing § 701(a)(2)). This generalized appeal to reasonableness is not a judicially discernable standard to measure or prescribe when USCIS must make this particular eligibility determination. It "merely restates a principle of good administration." *Jiwani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 25-CV-2847, 2026 WL 788945, at *5–6 (N.D. Ga. Mar. 18, 2026) (collecting cases and noting that "Section 555(b) does not create a duty to do any specific act"); *see also Hidalgo Canevaro*, 540 F. Supp. 3d at 1240–41 (noting that §§ 555(b) and 706(1) empower courts to compel only ministerial, non-discretionary acts). Plaintiffs also point to 8 U.S.C. § 1571(b), which voices the "sense of Congress" that immigration benefit applications "should be completed" within 180 days of filing. But a permissive legislative aspiration that an agency "should" act by a date binds no one—including USCIS and DHS. *Lorente*, 2026 WL 1396116, at *7 (quoting *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008)).

With no success on those fronts, Plaintiffs make what is effectively a policy argument: that a contrary rule would allow an agency to "never act on a statutory program Congress created" [ECF No. 9 pp. 15, 17; ECF No. 15 p. 5]. Even if the Court were in a position to react to that concern, the claim here is not one of a complete failure to act, nor does the record show a refusal to act. Instead, Plaintiffs' claim is one of unreasonable delay, which is foreclosed from judicial

review for all of the reasons stated herein. *See Lorente*, 2026 WL 1396116, at *7–8 (collecting cases and noting that "the pace of adjudication is discretionary, and courts are without jurisdiction to hear claims arising from a delay in adjudication."); *Alfassi*, 614 F. Supp. 3d at 1256 ("Because the pace of USCIS' processing of I-130 Petitions is left to the sound discretion of the agency, and because such pacing neither qualifies as or is subject to a nondiscretionary act, the Court lacks the jurisdiction to hear the claim and the authority to Order USCIS to expedite review of Plaintiffs' Petition."); *Hidalgo Canevaro*, 540 F. Supp. 3d at 1241 ("In the context of adjustment of status applications, which are also filed with USCIS, many courts in this Circuit have found that claims of unreasonably delayed consideration are not reviewable.").

This leaves Plaintiffs' alternative request—placement on the U Visa waitlist—which also is not subject to judicial review. First, 8 C.F.R. § 214.14(d)(2), the sole authority on which this argument rests, supplies no meaningful standard of the kind § 701(a)(2) requires. As a reminder, the regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list," with priority "determined by the date the petition was filed." 8 C.F.R. § 214.14(d)(2). While Plaintiffs argue that 8 C.F.R. § 214.14(d)(2) regulation is "precise, binding, and readily applied" [ECF No. 15 p. 4], Defendants are correct that it "prescribes what occurs only after USCIS has completed a full eligibility determination" and that nothing in it prescribes "when USCIS must undertake that adjudication" or "how quickly it must do so" [ECF No. 16 p. 3]. In other words, the regulation sets no timetable, no sequence, and no criteria governing when USCIS must decide whether a petitioner is eligible. It tells USCIS what to do after finding a petitioner eligible; it does not tell USCIS when to make that finding. Second, and independently, the regulation's placement command does not apply to Plaintiffs on the facts pleaded. The regulation operates in two steps: USCIS first conducts a de

novo review of the petition, 8 C.F.R. § 214.14(c)(4), and only if it finds the petitioner eligible yet cannot issue a visa "due solely to the cap" must it place the petitioner on the waiting list, 8 C.F.R. § 214.14(d)(2). Defendants have not determined that Plaintiffs are eligible, as Plaintiffs themselves acknowledge [ECF No. 9 pp 3–4; ECF No. 15 pp. 5–6]. The Complaint faults Defendants for failing "to provide a decision as to whether [Plaintiffs] are eligible for a U visa" and acknowledges that petitioners receiving a favorable bona fide determination "are not placed on the waitlist" [ECF No. 1 ¶¶ 42, 78], and their supplemental brief states that they "remain without a Waiting List Determination" [ECF No. 15 p. 6]. In sum, because USCIS has not made the eligibility finding, there is no "discrete agency action that [USCIS] is required to take," *Norton*, 542 U.S. at 64, and nothing for this Court to compel, *see Hidalgo Canevaro*, 540 F. Supp. 3d at 1242 ("Because there are no requirements, statutory or regulatory, regarding when USCIS must determine which petitioners are waitlist eligible, Plaintiffs' claims are non-reviewable."); *Norton*, 542 U.S. at 63 n.1 ("[D]elay cannot be unreasonable with respect to action that is not required.").

Count I is dismissed without prejudice for lack of subject-matter jurisdiction under 5 U.S.C. § 701(a)(2).[6]

**B. Count II fails to state a Due Process claim because Plaintiffs identify no constitutionally protected interest.**

Count II fails at the threshold because Plaintiffs identify no constitutionally protected interest, and "[c]ourts have routinely dismissed both substantive and procedural due process claims

[6] Some courts have assumed a standard exists and rejected similar claims under the multifactor "rule of reason" framework of *Telecommunications Research & Action Center*, 750 F.2d at 80. *See, e.g.*, *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 263 (E.D.N.Y. 2021). This Court resolves the antecedent question instead: § 701(a)(2) asks whether a meaningful standard exists before that inquiry may begin, and none does. Because this Court resolves Count I on § 701(a)(2) grounds—the issue on which it ordered supplemental briefing—it does not reach Defendants' separate arguments under 8 U.S.C. § 1252(a)(2)(B)(ii).

alleging unreasonable delay in adjudicating an immigration application." *Echeverri*, 2023 WL 5350810, at *8 (collecting cases). Plaintiffs concede that "it is true that courts have found no absolute right to a U visa" [ECF No. 9 p. 18], but assert two interests nonetheless: a "right to a fair, lawful, and timely process" for seeking U Visas, and interests arising from prolonged delays and the failure to place them on the mandatory waiting list [ECF No. 9 pp. 18–19]. Neither states a claim.

"A U visa application does not create a liberty or property interest protected by the Due Process Clause." *Maldonado-Guzman v. Sessions*, 715 F. App'x 277, 284–85 (4th Cir. 2017). That conclusion forecloses Plaintiffs' remaining theory. As for the asserted right to a "fair, lawful, and timely process," Plaintiffs cite no authority recognizing such a freestanding interest [ECF No. 9 pp. 18–19]. Without a protected interest in the benefit, there is no entitlement to process: plaintiffs "do not identify a protected interest with respect to when USCIS must adjudicate their petition." *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 95 (D.S.C. 2020); *Echeverri*, 2023 WL 5350810, at *8.[7] At base, since Plaintiffs "have not identified any statutory procedure USCIS has violated" and is entitled to "no more process than Congress has provided." *Echeverri*, 2023 WL 5350810, at *9. Count II is **DISMISSED** for failure to state a claim.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [ECF No. 8] is **GRANTED** in accordance with this Order.

---

[7] It is Plaintiffs' obligation to research and formulate their arguments; the Court will not do it for them. Defendants pressed the same failure in reply: Plaintiffs "continue to not articulate why" the asserted interest is "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and, even were there such an interest, Plaintiffs do not explain how the process already provided failed to vindicate it [ECF No. 10 p. 7 (quoting *Reno v. Flores*, 507 U.S. 292, 303 (1993))].

2. Plaintiffs' APA claim [ECF No. 1] is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

3. Plaintiffs' due process claim [ECF No. 1] is **DISMISSED** with prejudice for failure to state a claim.[8]

4. The Clerk is directed to **CLOSE** this case.

**ORDERED** in Chambers at Fort Pierce, Florida, this 20th day of August 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

[8] Dismissal of Count II with prejudice is warranted because amended would be futile. No set of facts could establish a constitutionally protected liberty or property interest in a discretionary, congressionally capped benefit or in the timing of adjudication.